IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT ENDRIKAT,** : | |
|    Plaintiff : | |
| : | No. 1:21-cv-01684 |
|    v. : | |
| : | (Judge Kane) |
| **RANSOM, et al.,** : | |
|    Defendants : | |

**MEMORANDUM**

On October 1, 2021, pro se Plaintiff Robert Endrikat ("Endrikat"), who is presently incarcerated in the State Correctional Institution-Waymart ("SCI-Waymart"), initiated the above-captioned action by filing a 340-page complaint against forty-seven defendants connected to SCI-Waymart and other governmental entities within the Pennsylvania state government. (Doc. No. 1.) Endrikat also filed a motion for leave to proceed in forma pauperis. (Doc. No. 12.) The Court granted the motion for leave to proceed in forma pauperis and screened the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA")[1] on October 15, 2021. (Doc. Nos. 14-15.) The Court concluded that the complaint failed to state a claim upon which relief could be granted. (Id.) The Court accordingly dismissed the complaint without prejudice and granted Endrikat leave to file an amended complaint. (Id.) Endrikat timely filed his amended complaint on November 12, 2021, again raising civil rights claims under 42 U.S.C. § 1983 against forty-seven defendants. (Doc. No. 17.) The Court has screened the amended complaint and concludes that it fails to state a claim upon which relief may be granted as to forty-five of the forty-seven defendants. The court will accordingly dismiss those defendants.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

I.   **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially

plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

II.   DISCUSSION

   A.   Endrikat's Amended Complaint

As noted above, Endrikat's amended complaint asserts civils rights claims under 42 U.S.C. § 1983 against forty-seven defendants connected to SCI-Waymart and other governmental entities within the Pennsylvania state government. (Doc. No. 17.) The amended complaint alleges generally that several defendants took actions to prevent Endrikat from applying for parole, that he has not been given adequate access to the prison law library, and that two of the defendants retaliated against him by giving him a work detail that he was physically incapable of performing. (Id.) Before addressing the specific allegations in the amended

4

complaint, however, the Court will address several defects that are immediately apparent with respect to forty of the forty-seven defendants.

To begin, the amended complaint names as defendants the Pennsylvania Department of Corrections ("DOC"), SCI-Waymart, and the Pennsylvania Board of Probation and Parole, none of which may be sued under § 1983.  For a defendant to be held liable for a violation of a plaintiff's constitutional rights under § 1983, the defendant must be a "person" for purposes of the statute.  See 42 U.S.C. § 1983.  The DOC and its subdivisions are not persons subject to suit under § 1983.  See Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973) accord Pettaway v. SCI Albion, 487 F. App'x 766 (3d Cir. 2012).  Similarly, the Pennsylvania Board of Probation and Parole is not a person under § 1983.  See Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).  Accordingly, these three defendants will be dismissed.

Turning to the individual defendants, thirty-one of the defendants are subject to dismissal for Endrikat's failure to allege their personal involvement because they are not mentioned at all in the factual allegations in the amended complaint.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of respondeat superior.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence.  See id.  Here, with the exception of naming them as defendants, the amended complaint completely fails to mention Defendants Ransom, Miller, Cirelli, Grillo, Bassett, Altermer, Hager, Campbell, Hawley, Chiumento, Bollinger, Krempansky, Hendrick, Wenerowicz, Inness, Barncles, Verner, West, Morne, Kerwin, E. Hager, Rossetta, Woolf,

Carpenter, Mathew, Johnson, Smeal, Salosky, Schweinsburg, and the two John Doe defendants (one of whom purportedly works in the mailroom, the other of whom purportedly works in the governor's office). Accordingly, these thirty-one defendants will be dismissed for Endrikat's failure to allege their personal involvement.

Similarly, Defendants Delancy, George, Wetzel, Holmes, Talaber, and Meyers are subject to dismissal for lack of personal involvement because the amended complaint only mentions them in passing and does not make any allegations as to how they actually participated in the alleged violations of Endrikat's civil rights. Specifically, the amended complaint alleges (1) that Endrikat sent a request to Defendant Delancy to be enrolled in a violence prevention class but he was not subsequently enrolled in the class; (2) that Defendant George was slated to be the parole agent handling Endrikat's March 2019 parole hearing; (3) that Defendant Wetzel was sent a letter from the State Inspector General detailing potential illegal activity at SCI-Waymart; (4) that Defendant Holmes was sent a courtesy copy of the same letter; (5) that Defendant Talaber was "removed from his position" as secretary of the Board of Probation and Parole during the events alleged in the amended complaint; and (6) that Defendant McDermott told Endrikat on one occasion that Defendant Meyers could not "take the pressure" and that Endrikat therefore should not send her requests relating to his parole. (Doc. No. 17 at 30, 39, 43.) None of these allegations are sufficient to allege personal involvement, and Defendants Delancy, George, Wetzel, Holmes, Talaber, and Meyers will therefore be dismissed.

This leaves seven defendants against whom Endrikat makes specific factual allegations: Defendants Gorman, Chaple, Elliott, Gilmartin, McDermott, Kaye, and Porosky. The Court turns its attention to the allegations against those defendants.

According to the amended complaint, Endrikat's minimum sentence for his underlying criminal conviction ended on June 6, 2019. (Doc. No. 17 at 29.) Prior to this date, he had been requesting for two years to be admitted into "the program(s)." (Id.) Defendants Gorman and Chaple—who were employed as Correction Classification Program Manager and Unit Manager, respectively—allegedly refused to put Endrikat in "the proper courses," which allegedly caused him to be ineligible for parole. (Id.)

Sometime prior to May 2018, Endrikat allegedly received a communication from the Pennsylvania Board of Probation and Parole stating that he would receive a parole hearing in March 2019. (Id.) On June 26, 2018, Endrikat met with Defendant Elliott, who was employed by the prison as a counselor, for Endrikat's yearly review. (Id.) Endrikat signed a form during the meeting, but noticed that one part of the form, indicating that Endrikat had refused to participate in the meeting, was incorrect. (Id.) Elliott allegedly told Endrikat that she would correct the error, but she never did so. (Id.) Endrikat alleges that Elliott did this intentionally to make him ineligible for parole. (Id. at 29-30.)

Sometime prior to Endrikat's scheduled March 2019 parole hearing, Defendant Chaple allegedly asked Endrikat how he had gotten a parole hearing scheduled given that Endrikat had never submitted a parole package to the appropriate authorities. (Id. at 31.) Endrikat informed Chaple that he had sent the parole package directly to the Board of Probation and Parole. (Id.) Chaple then allegedly asked Endrikat why "the courses" were not taken. (Id.) Endrikat allegedly told Chaple that he had been requesting placement in "programs" for over two years but had not been placed in the programs. (Id.) Defendant Elliott was also purportedly "sitting there" during this encounter but "said nothing" about the form that she had allegedly falsified. (Id.) Chaple allegedly stated that there was "no record of that." (Id. at 32.) Chaple then

allegedly asked Endrikat if Endrikat would be willing to take "the courses," and Endrikat replied that he would be willing to do so. (Id.) Chaple purportedly told Endrikat, however, that he would not put Endrikat in the courses. (Id.) Chaple then informed Endrikat that he would not be recommended for parole by the prison. (Id.) Chaple stated that he was revoking Endrikat's scheduled parole hearing date and that Endrikat would not be allowed to see the parole board at that time. (Id.) Endrikat alleges that Chaple's decision to revoke his parole hearing was retaliation for Endrikat having mailed the parole package directly to the Pennsylvania Board of Probation and Parole. (Id.) Sometime after this meeting, Defendants Gorman, Chaple, and McDermott "failed to lower" Endrikat's security classification, which allegedly made him ineligible for parole. (Id. at 33.) Chaple also allegedly removed Endrikat's parole number from "the list." (Id.)

The amended complaint alleges that on January 8, 2019, Endrikat's commissary items went missing and an unnamed individual told him that there was no record of his commissary order. (Id.) Defendant Gilmartin also allegedly fabricated misconduct charges against Endrikat for threatening an employee or their family with bodily harm, using abusive, obscene, or inappropriate language to or about employees, and being present in an unauthorized area. (Id. at 34.) An unnamed corrections officer allegedly told Endrikat that Chaple and Gilmartin had arranged for the fabricated charges so that there would be a reason for Chaple to have revoked Endrikat's parole hearing. (Id.) Endrikat also alleges that his mail was intercepted by the mail room, with the excuse that the mail room needed to correct an address. (Id.) Endrikat does not state whether the mail was ultimately confiscated or whether it was allowed to be sent out to the intended recipient. (Id.)

In June 2019, Defendants Kaye and Porosky, a unit manager and corrections officer respectively, allegedly assigned Endrikat to a janitorial work assignment. (Id. at 37.) Kaye and Porosky were allegedly aware at the time that Endrikat was unable to perform janitorial tasks due to some unspecified medical conditions. (Id.) Endrikat refused to perform the work assignment, and Kaye and Porosky allegedly attempted to have Endrikat disciplined for refusing a work assignment. (Id.) They allegedly filed a false report about the incident. (Id.) Kaye and Porosky allegedly took these actions to retaliate against Endrikat, intimidate him, and harass him. (Id.)

Endrikat was allegedly refused a parole hearing again in March 2020. (Id. at 39.) Endrikat inquired as to why he had been denied a hearing, and Defendant Chaple allegedly told him that it was because Endrikat had not completed the required courses. (Id.) Endrikat alleges that this statement was false, as Endrikat had never refused to take any courses. (Id. at 40.) Defendants Kaye, Gilmartin, Gorman, Elliott, and McDermott also allegedly continue to falsify information on forms indicating that Endrikat is refusing to perform work assignments and refusing class assignments. (Id.)

Endrikat alleges that he has not been given adequate time in the prison law library. (Id. at 42.) He alleges that he has tried to get more time in the library to "type up his case," but that the request was denied. (Id.) Endrikat also allegedly asked Defendant McDermott in September 2020 whether he could see the parole board, and McDermott allegedly told him that he could not. (Id. at 42-43.)

Having reviewed the allegations in Endrikat's amended complaint, the Court finds that the amended complaint fails to state a claim upon which relief may be granted with respect to all defendants other than Chaple and Elliott. The allegations against Defendants Gorman, Gilmartin, and McDermott are largely conclusory in nature and lack well-pleaded factual

support.  The allegations against Kaye and Porosky are based on a theory of retaliation, but fail to state a prima facie claim of retaliation.  The Court will briefly address the claims against each of these defendants.

First, with respect to Defendant Gorman, Endrikat alleges that Gorman refused to enroll Endrikat in the appropriate courses, but he does not state what these courses were, what Gorman's role was in signing inmates up for courses, or how a failure to enroll in the appropriate courses would lead to ineligibility for parole.  Similarly, Endrikat's allegations that Gorman "failed to lower" Endrikat's security classification and falsified documents are conclusory in nature and not entitled to the assumption of truth.

Second, with respect to Defendant Gilmartin, Endrikat alleges that Gilmartin fabricated misconduct charges against him, but he does not provide any facts with respect to this claim.  The amended complaint does not allege what facts Gilmartin stated in the misconduct charge, whether the misconduct charge was ultimately brought before a disciplinary hearing officer, or what the ultimate result of any disciplinary hearing was.

Third, with respect to Defendant McDermott, Endrikat alleges in conclusory fashion that McDermott failed to lower Endrikat's security classification and that he has continued to falsify documents against Endrikat, but he does not provide any factual support for these assertions.

Endrikat's claims against Defendants Kaye and Porosky also fail to state a claim because Endrikat asserts retaliation claims against them but fails to state a prima facie case of retaliation. To state a retaliation claim upon which relief may be granted, a plaintiff must allege (1) that the plaintiff engaged in constitutionally protected conduct; (2) that the defendant took retaliatory action against the plaintiff sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a causal connection between the plaintiff's protected

conduct and the defendants' allegedly retaliatory action.  See Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).  In this case, Endrikat alleges that Defendants Kaye and Porosky gave him a work assignment that he was physically incapable of performing, but he fails to allege that there was a causal connection between Endrikat's actions and the Defendants' alleged retaliation.  There are simply no allegations in the amended complaint from which it could be inferred that Kaye and Porosky gave Endrikat the assignment as retaliation for something that he had done.

The amended complaint also fails to state a claim upon which relief may be granted based on Endrikat's alleged lack of access to the law library.  Prisoner plaintiffs may state a due process claim upon which relief may be granted for lack of access to a law library, but the relevant inquiry is whether the lack of access has impeded the plaintiff's access to the courts.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).  An allegation that a plaintiff has been denied access to a law library is not by itself sufficient to state a claim upon which relief may be granted; the plaintiff "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  See id.  Thus, to state a claim upon which relief may be granted for lack of access to the courts based on denial of access to a prison law library, plaintiffs must allege that the lack of library access caused actual injury by hindering their ability to pursue a nonfrivolous legal claim.  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); see also Millhouse v. Arabasak, 373 F. App'x 135, 137 (3d Cir. 2010); Snider v. Pa. Dep't of Corr., 503 F. Supp. 3d 360, 434 (M.D. Pa. 2020).  Here, Endrikat alleges that he has been denied sufficient access to the law library, but he fails to allege that this lack of access caused any actual injury to his access to court.

Finally, based on the Court's review of the amended complaint, the Court concludes that Endrikat's claims against Defendants Chaple and Elliott should proceed.  His claims against

those defendants sound in the alleged violation of his right to due process due to the defendants' alleged interference in his parole process. Although the Constitution does not give prisoners a protected liberty interest in a potential early release from prison before the expiration of a valid sentence, see Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979), prisoners may still have a protected liberty interest created by state law. See Newman v. Beard, 617 F.3d 775, 783 (3d Cir. 2010). Pennsylvania law creates such a protected liberty interest by giving prisoners the right to apply for parole and have their applications fairly considered. See id. (citing Jamieson v. Comm'r, Pa. Bd. of Probation and Parole, 495 A.2d 623, 627 (Pa. Commw. Ct. 1985)). Endrikat alleges that Defendants Chaple and Elliott have interfered with this right, and, when his amended complaint is liberally construed, the Court finds that this allegation is sufficient to allege a due process claim upon which relief may be granted. Endrikat also states a retaliation claim upon which relief may be granted against Chaple, as he alleges that Chaple wrongfully cancelled his March 2019 parole hearing as retaliation for Endrikat having mailed his parole package directly to the Pennsylvania Board of Probation and Parole. Accordingly, the Court will allow Endrikat's claims against Chaple and Elliott to proceed. This conclusion is without prejudice to the defendants' right to move to dismiss the complaint.

**B.      Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith[,] or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.  The Court should also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Here, with the exception of Endrikat's claims against the DOC, SCI-Waymart, and the Pennsylvania Board of Probation and Parole, the Court cannot conclude that further amendment would be futile or unjust.  Accordingly, Endrikat will be granted leave to file a second amended complaint.  Endrikat is advised that the second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint, the amended complaint, or any other document already filed.  The second amended complaint should set forth Endrikat's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendants in the acts that Endrikat claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Endrikat fails to file a second amended complaint, the amended complaint will remain the operative pleading and the case will proceed as to Endrikat's claims against Defendants Chaple and Elliott only.

### III.    CONCLUSION

For the foregoing reasons, the Court will dismiss Endrikat's amended complaint (Doc. No. 17) with respect to all defendants other than Chaple and Elliott and will grant Endrikat leave

to file a second amended complaint.  Service of process will be deferred pending the possible filing of a second amended complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
