IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT ENDRIKAT,** : | | |
| Plaintiff : | | |
| : | | No. 1:21-cv-01684 |
| v. : | | |
| : | | (Judge Kane) |
| **RANSOM, et al.,** : | | |
| Defendants : | | |

### MEMORANDUM

On October 1, 2021, pro se Plaintiff Robert Endrikat ("Endrikat"), who is presently incarcerated in the State Correctional Institution-Albion ("SCI-Albion") and was incarcerated in the State Correctional Institution-Waymart ("SCI-Waymart") at all relevant times, initiated the above-captioned action by filing a 340-page complaint against forty-seven defendants connected to SCI-Waymart and other governmental entities within the Pennsylvania state government. (Doc. No. 1.) The Court dismissed the complaint without prejudice for failure to state a claim upon which relief could be granted on October 15, 2021, pursuant to the screening provisions of the Prison Litigation Reform Act of 1995 ("PLRA") and granted Endrikat leave to file an amended complaint.[1] (Doc. Nos. 14-15.)

Endrikat filed an amended complaint on November 12, 2021, again raising civil rights claims under 42 U.S.C. § 1983 against forty-seven defendants. (Doc. No. 17.) The Court screened the amended complaint and concluded that it failed to state a claim upon which relief could be granted with respect to all defendants other than Defendants Chaple and Elliott. (Doc. Nos. 19-20.) The Court granted Endrikat leave to file a second amended complaint. (Id.)

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

Endrikat filed a second amended complaint on February 4, 2022.  (Doc. No. 26.)  The Court screened the second amended complaint on September 8, 2022, dismissing the claims against Defendants Chaple and Elliott without prejudice, dismissing the claims against all other Defendants with prejudice, and granting Endrikat leave to file a third amended complaint against Chaple and Elliott only.  (Doc. Nos. 36-37.)  The Court cautioned that if the third amended complaint did not comply with the pleading requirements of Federal Rule of Civil Procedure 8 it would be dismissed without further leave to amend.  (Doc. No. 36 at 2, 7; Doc. No. 37 at 1-2.)

Endrikat filed a third amended complaint on March 2, 2023, which asserts claims against Chaple and Elliott along with claims against other Defendants who have previously been dismissed with prejudice.  The Court now performs its mandatory screening of the third amended complaint and concludes that it fails to state a claim upon which relief may be granted.  The complaint will be dismissed without further leave to amend and this case will be closed.

I. **LEGAL STANDARDS**

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the

4

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## II.    DISCUSSION

### A.    Endrikat's Third Amended Complaint

At the outset, the Court will dismiss all claims asserted in the third amended complaint against Defendants other than Chaple and Elliott.  In its September 8, 2022 Memorandum and Order, the Court dismissed Plaintiff's second amended complaint and "deni[ed] further leave to amend with respect to Endrikat's claims against all Defendants other than Chaple and Elliott." (Doc. No. 36 at 6.)  Thus, the Court did not grant Endrikat leave to include these claims in his third amended complaint and summary dismissal of the claims is therefore appropriate.

Turning to the allegations against Chaple and Elliott, the third amended complaint alleges that Endrikat's minimum sentence for his underlying criminal conviction ended on June 6, 2019 and that prior to that date he had been requesting to be enrolled in programs that would help him obtain parole.  (Doc. No. 56 at 22.)  Chaple and Elliott allegedly refused to enroll Endrikat in appropriate courses, causing him to be ineligible for parole.  (Id.)

Sometime prior to May 2018, Endrikat allegedly received a communication from the Pennsylvania Board of Probation and Parole stating that he would receive a parole hearing in March 2019.  (Id.)  On June 26, 2018, Endrikat met with Defendant Elliott, who was employed by the prison as a counselor, for Endrikat's yearly review.  (Id.)  Endrikat noticed that one part of a form he needed for his parole application erroneously indicated that Endrikat refused to participate in the meeting.  (Id.)  Elliott allegedly told Endrikat that she would correct the error, but she never did so.  (Id.)  Endrikat alleges that Elliott did this intentionally to make him

ineligible for parole. (Id. at 22-23.) Endrikat further alleges that during his next meeting with Elliott, she stated that she refused to change the purportedly erroneous information and that she did so in retaliation for Endrikat's protected activities. (Id. at 58-60.)

On January 3, 2019, Endrikat allegedly met with Chaple and Elliott. (Id. at 23.) Chaple told him he would be seeing the Board of Probation and Parole in March 2019. (Id.) Chaple allegedly noticed that Endrikat had not been seen by a psychologist for an evaluation that was necessary for the parole application and represented that he would schedule the evaluation. (Id.)

Chaple allegedly asked Endrikat how he had gotten a parole hearing scheduled given that Endrikat had never submitted a parole package to the appropriate authorities. (Id. at 23-24.) Endrikat informed Chaple that he sent the parole package directly to the Board of Probation and Parole. (Id. at 24.) Chaple then allegedly asked Endrikat why "the courses" were not taken. (Id.) Endrikat told Chaple that he had been requesting placement in "programs" for over two years but had not been placed in the programs. (Id.) Chaple then allegedly asked Endrikat if Endrikat would be willing to take "the courses," and Endrikat replied that he would be willing to do so. (Id.) Chaple purportedly told Endrikat, however, that he would not put Endrikat in the courses. (Id.) Chaple then informed Endrikat that he would not be recommended for parole by the prison. (Id.) Chaple stated that he was revoking Endrikat's scheduled parole hearing date and that Endrikat would not be allowed to see the parole board at that time. (Id.) Endrikat alleges that Chaple's decision to revoke his parole hearing was retaliation for Endrikat having mailed the parole package directly to the Pennsylvania Board of Probation and Parole. (Id.) Endrikat further alleges that Chaple was Elliott's supervisor and was thus responsible for her actions in failing to correct the purportedly erroneous information on Endrikat's forms. (Id. at 52-55.) Endrikat seeks declaratory relief and damages against Chaple and Elliott. (Id. at 57, 62.)

Having reviewed the third amended complaint under the screening provisions of the PLRA, the Court will dismiss Endrikat's declaratory judgment claim against Chaple and Elliott as moot. Chaple and Elliott are employed at SCI-Waymart, but Endrikat is no longer incarcerated in that facility, having been transferred to SCI-Albion. (Doc. No. 56 at 7.) Endrikat's transfer makes his request for declaratory relief moot. See Sutton v. Rasheed, 323 F. 3d 236, 248 (3d Cir. 2003) (citing Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)).

The Court will also dismiss Endrikat's claims for damages against Chaple and Elliott for failure to exhaust administrative remedies. Under the PLRA, prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court. See 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020). The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison. See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, see Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002), but district courts may sua sponte dismiss complaints for failure to exhaust administrative remedies when the failure to exhaust is obvious from the face of the complaint. See id. (noting that sua sponte dismissals are "inappropriate unless the basis is apparent from the face of the complaint"); see also Caiby v. Haidle, 785 F. App'x 64, 65 (3d Cir. 2019) (unpublished); Glass v. Briggs, No. 3:23-cv-00182, 2023 WL 1768118, at *3 (M.D. Pa. Feb. 3, 2023).

To exhaust administrative remedies pursuant to the Pennsylvania Department of Corrections' inmate grievance policy, DC-ADM 804, an inmate must submit a written grievance within fifteen working days after the event or incident giving rise to the grievance. See DC-

7

ADM 804 § 1(A)(8), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20 Policies/804%20Inmate%20Grievances.pdf (last visited May 23, 2023). "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." Id. § 1(A)(11)(d); see also Wright v. Sauers, 729 F. App'x 225, 227 (3d Cir. 2018) (unpublished) (noting that prisoner plaintiff's claim for monetary damages is procedurally defaulted under DC-ADM 804 when plaintiff fails to request monetary damages in his initial grievance).

In this case, Endrikat contends that he exhausted administrative remedies with respect to his claims against Chaple and Elliott by filing a grievance on November 27, 2019 and subsequently appealing that grievance through all stages of administrative review. (Doc. No. 56 at 57, 62.) Review of the grievance, however, shows that Endrikat did not request monetary damages anywhere in the original grievance. See (Doc. 56-1 at 2). It appears from Endrikat's exhibits that he subsequently requested monetary damages in his appeal to the facility manager on December 9, 2019, see (id. at 4), but the plain language of DC-ADM 804 requires a plaintiff to request monetary damages in the inmate's "initial grievance." See DC-ADM 804 § 1(A)(11)(d). Thus, by failing to request monetary damages in his initial grievance, Endrikat failed to exhaust administrative remedies with respect to his claim for monetary damages. The Court will accordingly dismiss the damages claims against Chaple and Elliott for failure to exhaust administrative remedies.

**B.     Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure

8

allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.

Based on the foregoing, the Court will deny further leave to amend as futile.  It is clear from the face of the third amended complaint that Endrikat's claims for declaratory relief against Chaple and Elliott are moot and that he failed to exhaust administrative remedies with respect to his damages claims against Chaple and Elliott.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss Endrikat's third amended complaint without further leave to amend.  An appropriate Order follows.